UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| R. ALEXANDER ACOSTA, SECRETARY OF LABOR,<br>United states Department of Labor<br>    *Plaintiff*,<br><br>v.<br><br>KATHRYN T. PUCCIO,<br>    *Defendant*. | No. 3:18-cv-00532 (MPS) |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the Secretary of Labor, brings this action against Kathryn T. Puccio alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiff alleges that Ms. Puccio and her late husband Thomas P. Puccio, as fiduciaries of the Thomas P. Puccio Pension Plan (the "Plan"), drained the assets of the Plan for their personal use, to the detriment of participants entitled to pension benefits. ECF No. 84-1 at 1-2.

Plaintiff has moved for summary judgment against Ms. Puccio on all issues of liability and damages. *Id.* at 1. Plaintiff also requests that I enjoin Ms. Puccio from serving as a fiduciary for any ERISA-covered employee benefit plan. *Id.* at 32. Ms. Puccio has not opposed the motion.[1] Nonetheless, the Court must undertake its own analysis to determine whether the Secretary is entitled to judgment as a matter of law. *See Vermont Teddy Bear Co. v. 1-800*

---

[1] Ms. Puccio's counsel filed a response to Plaintiff's motion for summary judgment stating:
> Counsel represents that he has repeatedly communicated with [Ms. Puccio] in their customary fashion by calling her mobile phone and leaving messages both before and after the Court's grant of the extension of time to today to respond to the Plaintiff's Motion or to file substantive motions. Counsel has been unable to have any substantive consultation with his client since the Plaintiff's filing of the Motion for Summary Judgment regarding whether there remain facts in dispute, to receive authority to take any position in response to the instant motion, or to receive information and authority from the Defendant that would allow filing of a dispositive motion in her behalf with supporting facts.
> Accordingly, Defendant leaves the Plaintiff to his proof.

ECF No. 89 at 1.

1

*Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  For the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment and renders judgment in favor of Plaintiff.

**I.     FACTS**

The following facts are taken from Plaintiff's Local Rule 56(a) Statement and are undisputed.[2]

On January 1, 1993, Mr. Puccio, the principal of the Law Office of Thomas P. Puccio, established the Plan. ECF No. 84-2 ¶¶ 1-2.  The Plan is "a defined benefit plan" subject to ERISA. *Id.* ¶¶ 3-4.  The plan sponsor was the Law Office of Thomas P. Puccio, and the named trustees were Mr. Puccio and Ms. Puccio. *Id.* ¶¶ 5-6.  Mr. Puccio also "served as the Plan Administrator" and opened and maintained investment accounts for the Plan at Neuberger Berman LLC, E*Trade Securities LLC [("E*Trade")], Morgan Stanley Smith Barney LLC [("Morgan Stanley")], The Vanguard Group, and UBS Financial Services, Inc." *Id.* ¶¶ 17, 24, 25.  On August 25, 2003, the Plan was restated, at which time Mr. Puccio and Ms. Puccio signed the restated Plan Adoption Agreement as trustees. *Id.* ¶ 7.  Mr. Puccio and Ms. Puccio had the authority, as trustees, to manage and control the assets of the Plan, including the authority to make investments and the authority to withdraw funds from the Plan. *Id.* ¶¶ 11-12.

Plan Form 5500s, prepared by the Plan's former third-party administrator, T.J. Kowalchuk Associates, Inc., were filed with the United States Department of Labor for the years 2006-2009 "on the basis of information and data provided by … [Mr.] Puccio." *Id.* ¶¶ 14-15.

---

[2] Ms. Puccio did not file a memorandum in opposition to Plaintiff's motion for summary judgment and did not file a Local Rule 56(a)2 Statement disputing the material facts set forth in Plaintiff's Local Rule 56(a)1 Statement. Therefore, Plaintiff's Statements that are supported by the evidence in the record are deemed admitted for the purposes of this ruling. Local Rule 56(a)1 ("Each material fact set forth in the local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party….").

The Form 5500 filed for the year 2009, "the last year a form 5500 was filed, shows the Plan assets were valued at $2,146,836.70." *Id.* ¶ 28.

The Plan defines participants as "employees" of the plan sponsor and, after one year of service, the participants become vested. The vested plan participants listed on the Form 5500s for the years 2006-2009 were Mr. Puccio, Ms. Puccio, Joseph A. Medina, and Lynda Darnell Snagg. *Id.* ¶ 17. Snagg was employed by Mr. Puccio and Ms. Puccio "to assist them with household and [Mr.] Puccio's work-related matters" from "1991 to December 31, 1998." *Id.* ¶ 21. Medina was employed by the Plan sponsor as an executive assistant from June 2001 to March 12, 2012. *Id.* ¶ 19. After Mr. Puccio's death, Medina "assist[ed] with winding down [Mr.] Puccio's law practice and with the Estate of [Mr.] Puccio." *Id.* ¶ 20. Both Medina and Snagg were told by Mr. Puccio when they were hired "that they were entitled to a pension benefit." *Id.* ¶ 18. "As of May 30, 2019, Medina's pension benefit entitlement was [$288,385.36]³ and Snagg's pension benefit entitlement was $196,036.12." *Id.* ¶ 44. "To date, neither Medina nor Snagg have received any portion of the Plan pension benefit due and owing to them." *Id.* ¶ 63.

Between 2010 and 2012, Mr. Puccio withdrew funds from the Plan. "On July 28, 2010, [Mr.] Puccio authorized and executed a wire transfer drawn on the Plan's Morgan Stanley account totaling $75,000.00." *Id.* ¶ 35. Between November 2010 and April 2011, Mr. Puccio "authorized and executed withdrawals, wire transfers and/or checks drawn on the Plan's E*Trade account totaling $645,000.00." *Id.* ¶ 31. On April 1, 2011, Mr. Puccio "authorized and executed

---

[3] Edward J. Vigneau, President and Actuary of TLC Pension Consulting Inc., prepared an affidavit in which he states that Medina "was entitled to a lump sum benefit of $288,385.36." ECF No. 84-7 ¶ 16. Plaintiff also attached a "benefit election form" prepared by Vigneau listing the lump sum amount as $288,385.36. *Id.* at 6. Plaintiff states in its Local Rule 56(a)1 Statement and Memorandum in Support of Motion for Summary Judgment that Medina is entitled to $288,285.35—one hundred dollars less than the amount Vigneau provides. ECF No. 84-1 ¶ 44, ECF No. 84-1 at 32. I find that the amount provided by Vigneau is supported by the record and utilize that value hereinafter.

3

the redemption of all funds from the Plan's [Vanguard Group] account in the form of a check totaling $48,874.65." *Id.* ¶ 33.  Between April, 2011 and February, 2012, Mr. Puccio "authorized and executed withdrawals, wire transfers and/or checks drawn on the Plan's Neuberger Berman LLC account totaling $1,000,000.00." *Id.* ¶ 29.  The withdrawn funds from all four accounts "were deposited to [Mr.] Puccio's 'Special Account' … at HSBC Bank." *Id.* ¶¶ 30, 32, 34, 36.  Funds were transferred from the "Special Account" at HSBC Bank "to a joint account held by [Mr.] Puccio and [Ms.] Puccio jointly at Citibank[]", between January 2011 and January 2012, totaling $360,500.00. *Id.* ¶ 37.

On March 12, 2012, Mr. Puccio died. *Id.* ¶ 1.  Ms. Puccio "never resigned her position as Trustee to the Plan" and "no successor Trustee was appointed to replace him", leaving Ms. Puccio the sole trustee.  *Id.* ¶¶ 8-10.  After Mr. Puccio's death, Ms. Puccio withdrew funds from the Plan.  "From March 23, 2012 through July 26, 2013, [Ms.] Puccio authorized and executed wire transfers of funds totaling $109,586.19 from the Plan's Neuberger account to an account at First County Bank in the name of Kathryn Puccio." *Id.* ¶ 38.  "On March 26, 2012, [Ms.] Puccio authorized the issuance of checks totaling $55,812.77, drawn on the Plan's Neuberger account to personal credits, such as stores, credit card services, wages for housekeepers and a chauffeur." *Id.* ¶ 39.  Altogether, Mr. Puccio and Ms. Puccio withdrew $1,934,273.61 from the Plan's investment accounts. *Id.* ¶ 40.  The only Plan investment accounts that have any money remaining are E*Trade with a balance of $757.94 and Morgan Stanley with a balance of $4,426.45. *Id.* ¶ 41.   The money that was withdrawn from the Plan's investment accounts was "used to pay for expenses unrelated to the Plan and its administration." *Id.* ¶ 42.  None of the withdrawn funds was allocated to Plan participants Joseph Medina or Lynda Snagg as payment for pension benefits. *Id.* ¶ 43.

When Mr. Puccio died, Ms. Puccio "was appointed Executrix of his estate…." and "retained the legal services of Ward Cleary, Esq. of Curtis, Brinkerhoff and Barrett PC to represent" the estate and herself as Executrix. *Id.* ¶¶ 47-48. Ms. Puccio "had knowledge of the pension benefit obligation owed to Medina and Snagg prior to her final withdrawal of Plan assets from the Neuberger Berman LLC account." *Id.* ¶ 61. Ms. Puccio's "legal representatives, Attorneys Ernest Honecker and Ward Cleary, had knowledge that her husband, Mr. Puccio, had made many large withdrawals from the Plan's investment accounts during the two years prior to his death as his business declined." *Id.* ¶ 49. They "informed" Ms. Puccio about "the Plan's finances and the existence of funds in investment accounts…." *Id.* ¶ 50. Ms. Puccio and "her legal representatives obtained information about the Plan and the pension benefit obligations to Plan participants Medina and Snagg." *Id.* ¶ 51.

## II.      LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir.2011) (citation omitted). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir.2000) (citation omitted). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir.2006) (internal

quotation marks and citation omitted).  On summary judgment, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013) (quotation marks and citation omitted).

Although "[t]he non-moving party need not respond to the motion [for summary judgment] ... a non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir.2014) (citations omitted).  "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co.,* 373 F.3d at 242.  "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson*, 766 F.3d at 194 (citation omitted).

### III.    DISCUSSION

Plaintiff requests that this Court: 1) find Ms. Puccio liable for violations of ERISA; 2) order Ms. Puccio to make restitution to the Plan to satisfy the pension benefit entitlements of Plan participants Medina and Snagg in the amounts of $288,385.36 and $196,036.12, respectively; and 3) enjoin Ms. Puccio from serving as a fiduciary for any ERISA benefit plan. ECF No. 84-1 at 32.

#### A.  Ms. Puccio's Status as Fiduciary to the Plan

Plaintiff alleges that there is no genuine dispute of material fact that Ms. Puccio was and is a fiduciary of the Plan because she was granted discretionary authority to manage and control

the assets of the Plan as a trustee, and because she exercised discretionary authority over the assets of the Plan. ECF No. 84-1 at 16, 17. "ERISA imposes a fiduciary duty on plan administrators to administer a benefits plan 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Ladouceur v. Credit Lyonnais*, 584 F.3d 510, 512 (2d Cir. 2009) (internal quotation marks omitted) (quoting 29 U.S.C. § 1104(a)(1)).

"[A] person is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan." *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996) (internal quotation marks omitted); *see also L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau City., Inc.*, 710 F.3d 57, 68 (2d Cir. 2013) ("ERISA § 3(21)(A) imposes fiduciary status on (1) those who exercise discretionary authority with regard to the management or administration of the plan, regardless of whether such authority was ever granted and (2) those who have actually been granted discretionary authority, regardless of whether such authority is ever exercised.") (citations, internal quotation marks, and alterations omitted).

Plaintiff has presented evidence that Ms. Puccio was and is a fiduciary because she was granted discretionary authority as a named trustee under the Plan. Under ERISA, a trustee "ha[s] exclusive authority and direction to manage and control the assets of the plan except to the extent that…." the plan expressly limits that control. 29 U.S.C. § 1103(a). Ms. Puccio signed the Plan Adoption Agreement on August 25, 2003 as a trustee, and as a trustee, she had the authority to manage and control the assets of the plan, including investment authority and the authority to

withdraw funds. ECF No. 84-2 ¶¶ 7, 11-12. After Mr. Puccio's death, Ms. Puccio never resigned her position as trustee and no successor trustee was appointed to replace Mr. Puccio, leaving Ms. Puccio as the sole trustee to the Plan. *Id.* ¶¶ 8-10. The Plan does not expressly limit her authority as trustee, ECF No. 84-10 at 108-09; therefore, there is no dispute that Ms. Puccio was and is a fiduciary of the Plan as the sole trustee.

Plaintiff has also presented evidence that Ms. Puccio was and is a fiduciary of the Plan because she exercised discretionary authority over the management of the Plan by withdrawing assets. Specifically, Ms. Puccio withdrew $109,586.19 from the Plan and transferred those funds to a different bank account in her own name. *Id.* ¶ 38. She also authorized checks to be issued from the Plan's account to stores, credit card services, and other personal expenses totaling $55,812.77. *Id.* ¶ 39. Altogether, Ms. Puccio withdrew $165,398.96 from the Plan. No reasonable juror could find that Ms. Puccio did not exercise discretionary authority over the Plan in light of these withdrawals. Accordingly, she owed a fiduciary duty to administer the Plan with care, skill, prudence, and diligence.

### B. Breach of Fiduciary Duty

Plaintiff asserts that Ms. Puccio breached, among others, her fiduciary duties under § 404(a)(1)(A), (B) and (D) of ERISA, which provide:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; ... and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

29 U.S.C. § 1104(a)(1).

According to Plaintiff, Ms. Puccio did not discharge her duties in the interest of the participants because she diverted funds from the Plan for her own personal use, leaving only a negligible balance in the Plan incapable of paying Medina's or Snagg's pension benefit. ECF No. 84-1 at 22, 24.  I agree with Plaintiff that no reasonable jury could find otherwise.

Ms. Puccio had a fiduciary duty to "act to ensure" that the Plan "receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 874 F.2d 912, 916 (2d Cir. 1989) (citation omitted).  Plaintiff presented evidence that Ms. Puccio did not ensure that the Plan had the funds to be used on behalf of participants Medina and Snagg.  Instead, she depleted the funds from the Plan's account to the point that the Plan lacked financial integrity and the obligations to participants Medina and Snagg could not be satisfied. ECF No. 84-2 ¶¶ 38-39; *see also L.I. Head Start Child Dev. Serv., Inc.*, 710 F.3d at 70 (agreeing with the district court that the ERISA plan administrators breached their fiduciary duties by dissipating the plan reserves).  Ms. Puccio has not offered any evidence to dispute Plaintiff's evidence that the Plan's account balance was depleted, in part by Ms. Puccio herself, from $2,146,836.70 to $5,184.39—an amount insufficient to satisfy Medina's entitlement of $288,385.36 and Snagg's entitlement of $196,036.12, neither having received any portion of their entitlements. ECF No. 84-2 ¶¶ 28, 38-39, 41, 44, 63.

Plaintiff has also submitted evidence that Ms. Puccio breached her fiduciary duty under ERISA § 406(b)(1) by dealing with the assets of the plan in her own interest. 29 U.S.C. § 1106(b)(1) ("A fiduciary with respect to a plan shall not—deal with the assets of the plan in his own interest or for his own account…."). Specifically, Ms. Puccio issued checks from the Plan's investment account for her own interest, including checks to stores, credit card services,

9

housekeepers, and a chauffeur. ECF No. 84-2 ¶ 39. There is no genuine dispute of material fact that Ms. Puccio breached her fiduciary duty to the Plan by depleting the Plan's assets and using the Plan's funds for her own interest.[4]

### C. Breach of Duty to Prevent Breaches by Co-Fiduciary

If an ERISA plan has two or more trustees, "each shall use reasonable care to prevent a co-trustee from committing a breach; and [] they shall jointly manage and control the assets of the plan…." ERISA § 405(b)(1); 29 U.S.C. § 1105(b)(1). Under ERISA § 405(a), a co-fiduciary is liable for a breach of fiduciary duty by another fiduciary of the same plan:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a). As noted above, "section 1104(a)(1) of this title" includes a duty on the party of each fiduciary to administer the plan "with the care, skill, prudence, and diligence" that a prudent person would use under similar circumstances. 29 U.S.C. § 1104(a)(1)(B). Thus, under ERISA Section 405(a)(2), a fiduciary who fails to exercise reasonable care to prevent her co-fiduciary from breaching his fiduciary duty is herself liable for the breach.

Plaintiff asserts that Ms. Puccio is liable because she failed to manage and control the assets of the plan as a trustee, failed to use reasonable care to prevent Mr. Puccio from committing a breach, and consequentially, enabled Mr. Puccio to withdraw substantial assets from the Plan to pay personal expenses. ECF No. 84-1 at 25-26.

---

[4] Although Ms. Puccio was also a beneficiary under the Plan, and thus was entitled to a portion of its assets, she could not use Plan assets to finance her lifestyle to the point that the other participants were disadvantaged. 29 U.S.C. § 1104(a)(1)(A) (requiring fiduciary to discharge plan duties solely in interest of participants and beneficiaries and for exclusive purpose of providing benefits to such persons).

The undisputed evidence demonstrates that had Ms. Puccio undertaken any of her responsibilities as a trustee to manage the assets of the Plan, she would have discovered that the assets were being withdrawn by the other trustee, her husband.  Her abdication of her duties to ensure that the Plan received all the funds to which it was entitled, to jointly manage the assets of the plan, and to use reasonable care to prevent the self-dealing by Mr. Puccio enabled Mr. Puccio to breach his duty as a co-fiduciary and withdraw almost two million dollars from the Plan's accounts for his (and her) personal benefit. *See Free v. Briody*, 732 F.2d 1331,  1335-36 (7th Cir. 1984) ("By failing to take any action with respect to the plan, Briody  enabled [his co-trustee] to breach his fiduciary duties.  Had Briody taken control of the assets … [p]rompt action could well have prevented [the co-trustee] from giving $40,000" to a purported financial advisor who never returned the money and ultimately pled guilty to charges resulting from fraudulent transactions.). Ms. Puccio accepted a position as trustee and cannot avoid liability for Mr. Puccio's "mismanagement of the Plan by simply doing nothing." *Id.* at 1336; *see also Chao v. Docster*, No. 01-cv-827 (NAM/DEP), 2006 WL 1593521, at *8 (N.D.N.Y. Mar. 31, 2006) (explaining that co-trustee's breach "would have been obvious to a genuine trustee" but for an "abdication of the duty he owed to the plan's beneficiaries.… [E]ven accepting [the trustee's] claim of complete non-involvement in the administration of the retirement plan, he breached his fiduciary obligations with respect to the plan as a matter of law.").

Ms. Puccio's inaction was particularly egregious in this case because the undisputed evidence demonstrates that the money Mr. Puccio withdrew did not simply vanish somewhere beyond the reach of Ms. Puccio.  Instead, Ms. Puccio had access to at least some of the money that Mr. Puccio withdrew from the Plan.  Mr. Puccio withdrew assets from the Plan and deposited them into his  "special account." ECF No. 84-2 ¶¶ 30, 32, 34, 36.  He then withdrew

$360,500.00 from his "special account" and transferred it to a joint account held by Mr. and Ms. Puccio. ECF No. 84-2 ¶ 37. That evidence strengthens the inference that she failed to "use reasonable care to prevent a co-trustee from committing a breach," 29 U.S.C. § 1105(b)(1)(A), and that her failure to act prudently – indeed, her failure to take any responsibility to manage and control the assets of the Plan – enabled Mr. Puccio's breach. Her abdication of all responsibility as a fiduciary enabled Mr. Puccio to make large withdrawals of Plan assets for personal expenses.

### D. Remedy

Because Ms. Puccio breached her fiduciary duties under ERISA §§ 404, 405, and 406, she is liable under ERISA § 409, which provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary….

29 U.S.C. § 1109(a). Under this provision, courts have "wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries." *Chao v. Merino*, 452 F.3d 174, 185 (2d Cir. 2006). The provision also makes clear that a breach makes the fiduciary liable for "losses *to the plan*," not "directly losses to beneficiaries," although "the ultimate goal of ERISA § 409(a) is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust." *Id.* (citation and internal quotation marks omitted).

Plaintiff requests that I: (1) order Ms. Puccio to "satisfy in full the pension benefit entitlements of Plan participants Joseph A. Medina and Lynda Darnell Snagg, in the amounts of [$288,385.36] and $196,036.12 respectively[]"; and (2) "issue an order enjoining [Ms. Puccio]

12

from serving as a fiduciary to any ERISA-covered employee benefit plan…." ECF No. 84-1 at 32. The request for monetary relief is reasonable because Medina and Snagg would be restored to the position they would have occupied but for Ms. Puccio's breaches of trust as a fiduciary and as a co-fiduciary. I therefore order Ms. Puccio to pay the sum of $484,321.48 to a trust fund for the benefit of Medina and Snagg ($288,385.36 for Medina's entitlement and $196,036.12 for Snagg's entitlement).

I also enjoin Ms. Puccio from serving as a fiduciary for any ERISA-covered employee benefit plan. It would be unwise to permit Ms. Puccio to serve as a fiduciary, in light of the many breaches of her responsibilities. The evidence shows that she enabled her husband to breach the trust imposed by ERISA and breached that trust herself by withdrawing assets from the Plan until the remaining balance was negligible and wholly insufficient to satisfy its obligations to the beneficiaries. The evidence in the record makes clear that she never took seriously her role as fiduciary, and in light of these violations, that she should never again be entrusted with the responsibilities of an ERISA fiduciary. *See Chao*, 452 F.3d at 186 (concluding that the district court did not abuse its discretion by entering a permanent injunction to protect "other funds against the possibility of … derelictions…."); *see also Metzler v. Solidarity of Labor Org. Health & Welfare Fund*, No. 95-cv-7242 (KMW), 1998 WL 477964, at *10 (S.D.N.Y. Aug. 14, 1998), *aff'd sub nom. Herman v. Goldstein*, 224 F.3d 128 (2d Cir. 2000) (finding the plaintiff's request to enjoin the defendants from ever serving as fiduciaries "reasonable").

## IV. CONCLUSION

For the reasons set forth above, I hereby GRANT Plaintiff's motion for summary judgment.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
February 15, 2021